OPINION OF THE COURT
Marcy Friedman, J.
This is an action by Ulico Casualty Company against Wilson, Elser, Moskowitz, Edelman & Dicker (Wilson Elser), its former attorney, for breach of fiduciary duty and malpractice. Ulico moves for partial summary judgment as to liability on its breach of fiduciary duty cause of action, and for an order directing that Wilson Elser return legal fees it received from Ulico during the period of Wilson Elser’s alleged disloyalty. Wilson Elser cross-moves for summary judgment dismissing plaintiffs complaint.
Ulico is an insurance company that specializes in trustee and fiduciary liability (TFL) insurance. Beginning in the early 1980s, Ulico entered into managing general agency agreements with Professional Indemnity Agency, Inc. and Professional Intermediary Associates, Inc. (PIA), pursuant to which PIA served as underwriting agent for Ulico’s TFL business. Under the managing general agency agreement entered into on April 9, 1992 and in effect at the time of the events at issue (MGA Agreement), PIA’s responsibilities included providing premium rate quotes to brokers for Ulico TFL insurance, underwriting and issuing Ulico TFL policies, collecting premiums, and ceding reinsurance of risks pursuant to Ulico’s reinsurance agreements. The MGA Agreement also provided for Wilson Elser to supervise the handling of all claims for coverage made by Ulico insureds. (MGA Agreement, schedule 1,1Í H, Wilson Elser exhibit D.)
Commencing in 1986, Ulico entered into an attorney-client relationship with Wilson Elser pursuant to a written retainer agreement. The retainer agreement between Ulico and Wilson *1053 Elser, dated August 27, 1993 and in effect at the time of the events at issue (retainer), provided in pertinent part:
“[Wilson Elser] agrees to render and perform all claims/litigation services necessary or proper for the protection of the interests and property of the Company [Ulico] whenever and to the extent required by the Company in the transaction of the business of the Company, with regards to policies listed in Exhibit A of whatever type or kind and wherever marketed by the Company. WEMED further agrees that its duties as claims counsel for such claims include, but are not limited to, the following: providing the company with recommendations of claims values for reserve purposes; monitoring litigation involving insureds of policies listed in Exhibit A which may expose the Company to payment of a claim; establishing a working relationship with Counsel during such litigation, including negotiating hourly recommendations [sic] to the defense of said litigation; advising on appropriate methods for settling claims; establishing a claims diary for reporting claims on policies listed in Exhibit A.” (Retainer 11 2, Ulico exhibit V)
The retainer further provided: “WEMED shall devote all the time necessary to the business of the Company, but shall not by this retainer be prevented or barred from taking other employment of a similar or other legal character by reason of the employment herein specified.” (Id. 11 6.)
Ulico claims that, beginning in or about January 1996, Wilson Elser, without the knowledge or consent of Ulico and in concert with PIA and Legion Insurance Company, assisted PIA and Legion in a scheme to convert Ulico’s TFL business to Legion. (See Wilson Elser mem of law at 6-7; second amended complaint 1Í 2.) Ulico terminated its relationship with Wilson Elser effective June 30, 1999. (Ulico exhibit DDD.)
The facts relevant to this claim are largely undisputed: PIA decided in 1995 that it wanted to establish an underwriting relationship with a carrier other than Ulico, and decided to do business with Legion. (Deposition of Mark Rattner [PIA’s former president] at 71, 73, Wilson Elser exhibit A.) According to PIA, it was concerned about Ulico’s financial condition and business practices. (Id. at 73-77.) PIA’s officers have acknowledged that PIA’s expectation or hope was, variously, that one half to two thirds or 60% to 75% of Ulico’s TFL policyholders *1054 would sign up with Legion upon renewal. (Id. at 95-96, 129; deposition of Nicholas Xanders [PIA’s senior vice-president] at 91, Ulico exhibit J.)
While Wilson Elser claims that PIA made the decision to transfer Ulico’s TFL business to Legion without any advice from Wilson Elser, Wilson Elser does not deny that it performed numerous acts on behalf of PIA and Legion in connection with the transfer, including the following: Wilson Elser advised PIA that PIA’s MGA Agreement with Ulico was not exclusive. (Deposition of Thomas Wilson, Esq. at 63, Ulico exhibit C; Rattner deposition at 84-85, Ulico exhibit I.) Wilson Elser drafted the managing generad agency agreement between PIA and Legion. (Deposition of Martin Nilsen [Wilson Elser attorney] at 20, 32, Ulico exhibit H.) Wilson Elser prepared the filings necessary to obtain the regulatory approvals from the 50 state insurance departments for Legion to provide TFL insurance. (Deposition of Edward Taylor [Wilson Elser attorney] at 40, 55, Ulico exhibit E.)
These filings included a continuity endorsement submitted on June 17, 1997 to the Pennsylvania State Insurance Department, which was designed to facilitate Legion’s issuance of renewal policies for Ulico’s insureds and which contained the misstatements that Legion “expects to be receiving a number of submissions from applicants who were previously insured by Ulico Casualty Company,” and that PIA was a “former” managing general agent for Ulico. (See Ulico exhibit DD.) The filings also included a CAP penalty endorsement, the purpose of which was to permit Legion to offer coverage more desirable than Ulico’s, and thereby to enhance Legion’s competitive position over Ulico. (See Rattner deposition at 184, Ulico exhibit I; deposition of John O’Brien [Ulico’s former marketing manager] at 145-149, Ulico exhibit P)
PIA did not want Ulico to find out about the Legion regulatory filings until PIA was ready to underwrite policies for Legion. (Xanders deposition at 78-80, 82, Ulico exhibit J.) Thus, PIA requested that Wilson Elser not disclose the regulatory filings on behalf of Legion to Ulico; and Wilson Elser did not do so. (Rattner deposition at 92, Ulico exhibit I; Wilson deposition at 99-100, Ulico exhibit C; O’Brien deposition at 161, Ulico exhibit P) Indeed, PIA instructed Wilson Elser to submit the Legion filings last in those states in which Ulico subscribed to a service that would have given it notice of a competitor’s filings; and Wilson Elser did so. (Rattner deposition at 144-145, Ulico exhibit I.)
*1055 Further, Wilson Elser advised PIA about setting up a captive insurance company to serve as a primary reinsurer for Legion’s TFL business. (See Nilsen deposition at 39-40, Ulico exhibit H; Ulico exhibit AA.)
Wilson Elser also advised PIA about strategy in connection with the termination of PIA’s relationship with Ulico. (See, e.g., Jan. 3, 1997 office mem from Martin Nilsen to Thomas Wilson, Ulico exhibit AA [providing status report on PIA matters and referring, under heading “Strategic Planning — Post ULICO,” to “timing the termination of the relationship with ULICO”].) After Legion began offering TFL insurance in or about March 1997 (Rattner deposition at 191-192, Wilson Elser exhibit A; Xanders deposition at 184, Ulico exhibit J), Wilson Elser continued to provide advice to PIA about terminating its MGA Agreement with Ulico. (See, e.g., Ulico exhibits 00 — TT.)
While Wilson Elser was still representing Ulico, Wilson Elser also advised PIA about a number of issues on which PIA’s and Ulico’s interests were adverse or potentially adverse. These included: licensing issues (see letter from Thomas Wilson to Mark Rattner, dated Aug. 1, 1996, Ulico exhibit W [stating with respect to an inquiry by the New York Insurance Department: “At this point, ULICO is the intended target and we should try and keep it that way”]; see also Ulico exhibit WW); underwriting disputes between PIA and Ulico (see Ulico exhibits XX, YY, ZZ); an arbitration commenced by PIA against Ulico regarding commissions (see Ulico exhibit AAA); and Ulico’s termination of the MGA Agreement for cause (see UUco exhibit BBB).
It is further undisputed that in four instances, Wilson Elser also engaged in dual representation of Legion and Ulico on claims by insureds for coverage, where the issue was whether coverage would be provided under the expired Ulico policies or the then effective Legion policies.
By letter dated February 5, 1998, Ulico terminated PIA “for cause,” effective 30 days from the date of delivery of the letter, based on breaches of the MGA Agreement. (Ulico exhibit TT.) By letter dated June 9, 1999, Ulico terminated its attorney-client relationship with Wilson Elser effective June 30, 1999 for the reason that “recently information has been brought to our attention that leads us to believe that WEMED has breached its fiduciary duties to Ulico.” (Ulico exhibit DDD.)
Ulieo’s second amended complaint alleges a first cause of action for breach of fiduciary duty by Wilson Elser to Ulico; a *1056 second cause of action for aiding and abetting PIA’s breach of fiduciary duty to Ulico; a third cause of action for legal malpractice; a fourth cause of action for tortious interference with contractual relations; and a fifth cause of action, mistakenly also denominated fourth, for tortious interference with prospective economic advantage.
Breach of Fiduciary Duty
As a threshold matter, Wilson Elser cross-moves for dismissal of the breach of fiduciary duty cause of action on the ground that it is duplicative of the cause of action for legal malpractice. It is well settled that a claim for breach of fiduciary duty against an attorney which is “premised on the same facts and seeking the identical relief sought in the legal malpractice cause of action, is redundant and should be dismissed.” (Weil, Gotshal & Manges, LLP v Fashion Boutique of Short Hills, Inc., 10 AD3d 267, 271 [1st Dept 2004]; accord AmBase Corp. v Davis Polk & Wardwell, 30 AD3d 171 [1st Dept 2006], affd 8 NY3d 428 [2006]; see also, e.g., Estate of Nevelson v Carro, Spanbock, Kaster & Cuiffo, 290 AD2d 399 [1st Dept 2002]; Mecca v Shang, 258 AD2d 569 [2d Dept 1999], lv dismissed 95 NY2d 791 [2000].) Conversely, a cause of action for breach of fiduciary duty will be maintainable if based on different facts than the malpractice cause of action. (See, e.g., Sage Realty Corp. v Proskauer Rose, 251 AD2d 35 [1st Dept 1998]; Schweizer v Mulvehill, 93 F Supp 2d 376 [SD NY 2000] [applying New York law]; see also Excelsior 57th Corp. v Lerner, 160 AD2d 407 [1st Dept 1990].)
Here, dismissal of the breach of fiduciary duty cause of action is not warranted. The original complaint in this action pleaded causes of action, among others, for breach of fiduciary duty and legal malpractice. By order dated May 30, 2000, this court (Shainswit, J.) dismissed all of the causes of action except that alleging breach of fiduciary duty. By order dated January 31, 2002, the court (Solomon, J.) granted leave to reassert a malpractice cause of action based on “new” allegations regarding Wilson Elser’s dual representation of Ulico and Legion on coverage claims by insureds. The second amended complaint does not limit the basis for the malpractice cause of action to Wilson Elser’s dual representation of Ulico and Legion on the coverage claims, and does plead the same facts in support of both the breach of fiduciary duty and the malpractice causes of action— namely, Wilson Elser’s dual representation of Ulico and Legion on the coverage claims, as well as Wilson Elser’s conflict of interest in assisting PIA in transferring Ulico’s TEL business to *1057 Legion. However, Ulico clarifies on the instant motion that it seeks to assert the malpractice cause of action based solely on the dual representation. (See Ulico reply mem at 34, 36.) To the extent that the breach of fiduciary duty cause of action is maintained based on Wilson Elser’s acts in assisting PIA with the transfer of Ulico’s business to Legion and the malpractice cause of action is maintained based on the dual representation, the claims are not duplicative.
The courts have repeatedly affirmed that “an attorney stands in a fiduciary relation to the client.” (Graubard Mollen Dannett & Horowitz v Moskovitz, 86 NY2d 112, 118 [1995].) As a fiduciary, an attorney “is charged with a high degree of undivided loyalty to his client.” (Matter of Kelly, 23 NY2d 368, 375 [1968].) “The representation of conflicting or adverse interests may constitute professional misconduct.” (Id.) While an attorney’s conflict of interest may be actionable under a cause of action for malpractice (see, e.g., Weil, Gotshal & Manges, LLP v Fashion Boutique of Short Hills, Inc., 10 AD3d 267 [2004], supra), a conflict of interest may also be actionable as a breach of fiduciary duty. (See Sage Realty Corp. v Proskauer Rose, 251 AD2d 35 [1998], supra.)
This court’s prior orders have sanctioned pleading of the malpractice cause of action based on Wilson Elser’s conflict of interest in undertaking dual representation on claims coverage matters, and pleading of the breach of fiduciary duty cause of action based on Wilson Elser’s conflict of interest in allegedly undermining Ulico’s business. Although the prior orders are not law of the case (see Baskin & Sears v Lyons, 188 AD2d 307 [1st Dept 1992]), they should be accorded deference because the causes of action are based on different facts and therefore are not duplicative.[1] The court accordingly turns to the merits of Ulico’s motion for partial summary judgment on the fiduciary duty cause of action.
*1058 While New York courts permit maintenance of both malpractice and breach of fiduciary claims based on conflict of interest provided they are not duplicative, the courts have not clearly articulated the standards for distinguishing between the types of conflict of interest that may be litigated on a malpractice theory as opposed to a breach of fiduciary duty theory. The fiduciary duty of attorney to client has been described as a duty of undivided loyalty which “superimposes onto the attorney-client relationship a set of special and unique duties, including maintaining confidentiality, avoiding conflicts of interest, operating competently, safeguarding client property and honoring the client’s interests over the lawyer’s.” (Matter of Cooperman, 83 NY2d 465, 472 [1994].) As one commentator has noted, despite these lofty and compelling precepts, the breach of fiduciary duty doctrine remains amorphous because the courts have not defined how “a client’s attempted recovery for a lawyer’s fiduciary breach differ[s] substantively from a claim for negligence.” (Wolfram, Legal Ethics Symposium: Lawyers’ Ethics in An Adversary System, A Cautionary Tale: Fiduciary Breach as Legal Malpractice, 34 Hofstra L Rev 689, 706 [2006] [summarizing the state of fiduciary breach doctrine nationwide].) New York cases have not undertaken a thoroughgoing examination of this issue. A common formulation for distinguishing between the factual bases for malpractice and fiduciary duty claims — albeit not one discussed in the New York cases — is that malpractice or negligence claims involve breach of the standard of care, while fiduciary duty claims involve breach of the standard of conduct. (See Wolfram at 691.) A similar formulation is that breach of fiduciary duty claims “do not relate to the manner in which the attorney pursued the underlying case, but rather the manner in which the defendants interacted with their client.” (Schweizer, 93 F Supp 2d at 400 n 29 [applying New York law but not citing any New York case].) Difficulties in applying these formulations exist where a conflict of interest affects the quality of the repre *1059 sentation and therefore the outcome of the case, in which event the conflict of interest may be tried on a negligence or malpractice theory.[2] The instant case does not present such difficulties as the conflict of interest on which the fiduciary duty claim is premised did not affect Wilson Elser’s representation of Ulico in any litigation, but consisted, rather, of advancing the business interests of certain clients, PIA and Legion, to the detriment of another client, Ulico.
Wilson Elser argues, without citation to legal authority, that “doing work for a competitor” does not constitute “a conflict of interest giving rise to a claim of a breach of fiduciary duty.” (Wilson Elser mem of law at 23.) The parties have not cited, and the court’s research has not located, any New York case involving an attorney’s conflict, outside a litigation context, in advancing the business interests of its client’s competitor. It is beyond dispute, however, that “attorneys historically have been strictly forbidden from placing themselves in a position where they must advance, or even appear to advance, conflicting interests.” (Greene v Greene, 47 NY2d 447, 451 [1979].) Code of Professional Responsibility DR 5-105 (22 NYCRR 1200.24) also strictly prohibits a lawyer from simultaneously representing conflicting interests without consent;[3] and evidence of conduct violating the Code may be offered to show that a lawyer has *1060 breached a fiduciary duty. (See Excelsior 57th Corp. v Lerner, 160 AD2d 407 [1990], supra; see also William Kaufman Org. v Graham & James, 269 AD2d 171 [1st Dept 2000] [violation of disciplinary rule considered on claim for malpractice].)
It has been held that “[p]erhaps the clearest instance of impermissible conflict occurs when a lawyer represents two adverse parties in a legal proceeding.” (Greene, 47 NY2d at 451.) However, it is clear that an attorney’s fiduciary duty is not limited to representation of a cliént in a particular matter, and prohibits representation where the attorney’s personal, business or financial interest is adverse to the client’s. (Id. at 452.) There is thus substantial persuasive authority upholding fiduciary duty claims based on an attorney’s appropriation of a former client’s business opportunity for the benefit of the attorney or another client, where there is a reasonable probability or significant risk that the client’s confidential information will be used in acquiring the business. (See, e.g., Maritrans GP Inc. v Pepper, Hamilton & Scheetz, 529 Pa 241, 602 A2d 1277 [1992] [upholding preliminary injunction precluding law firm from representing competitors of former client in matters that did not involve a lawsuit against former client but affected former client’s competitive position]; David Welch Co. v Erskine & Tulley, 203 Cal App 3d 884, 892, 250 Cal Rptr 339, 343 [1st Dist 1988] [finding breach of fiduciary duty based on law firm’s acquisition of collection accounts of its former client, a collection agency, court noting that due to attorney-client relationship during which attorney obtained confidential information about client’s business, attorney had “higher duty” to refrain from acquiring pecuniary interest in client’s business activities absent client’s informed consent]; Milbank, Tweed, Hadley & McCloy v Boon, 13 F3d 537 [2d Cir 1994] [affirming finding of breach of fiduciary duty by law firm which had represented former client in negotiations for purchase of a business and then represented former client’s agent in same transaction]; see generally Wolfram at 714-715.)[4]
*1061 The instant case presents an even more egregious breach of fiduciary duty, as it involves conduct by an attorney which fostered the business interests and advanced the competitive position of certain clients not over a former client but over a client which the attorney was still representing. The undisputed facts, summarized above (supra at 1053-1055), demonstrate that Wilson Elser did not merely assist PIA with preliminary steps to set up a competing business but, rather, assisted PIA at every stage of PIA’s plan to transfer Ulico’s TFL business from Ulico to Legion.
Wilson Elser fails to raise a triable issue of fact in this regard. It does not contest Ulico’s recitation of the acts Wilson Elser performed in connection with the transfer of Ulico’s TFL business to Legion. To the extent that Wilson Elser denies that it was aware of PIA’s plan to transfer Ulico’s business to Legion (see Wilson Elser mem of law at 14), this denial is flatly contradicted by two critical pieces of documentary evidence in this case: the Legion regulatory filings which expressly state that Legion “expects to be receiving a number of submissions from applicants who were previously insured by Ulico” (Ulico exhibit DD); and a Wilson Elser in-house memorandum from attorney Martin Nilsen to Thomas Wilson, dated January 3, 1997, providing a status report on PIA matters and stating, in preparation for an upcoming meeting between Wilson Elser and PIA: “2. Strategic Planning — Post ULICO. We need to discuss the issue of timing the termination of the relationship with ULICO and arrangements for transition of the business to Legion.” (Ulico exhibit AA.) Mr. Nilsen, the attorney at Wilson Elser who drafted the PIA-Legion managing general agency agreement, confirmed in his deposition testimony in this action that it was his understanding that PIA intended to replace Ulico with Legion as the insurance carrier for the TFL business. (Nilsen deposition at 57, Ulico exhibit H.) Edward Taylor, the Wilson Elser attorney who prepared the Legion regulatory filings, similarly testified that he was told at some point that PIA was “switching” to Legion. (Taylor deposition at 68-69, 74, Ulico exhibit E.) Thomas Wilson, in contrast, testified at his deposition that he had no recollection that Mr. Rattner of PIA had told him of his expectation that one half to two thirds of Legion policyholders would switch to Legion. (Wilson deposition at 97, Ulico exhibit C.) To the extent that Mr. Wilson’s testimony can *1062 be construed as denying knowledge that PIA’s plan was to transfer Ulico’s business to Legion (and not merely denying knowledge of the particular percentage that would be transferred), this testimony is inconsistent not only with the above documentary evidence but also with Mr. Wilson’s own deposition testimony, given in 2000 in a federal court action brought by Ulico against PIA. There Mr. Wilson acknowledged that he could have learned as early as January 1996 that PIA and Legion hoped to retain some percentage of Ulico’s business. (Wilson deposition at 57, Ulico reply, exhibit D.) This court accordingly finds that Wilson Elser fails to raise a bona fide issue of fact as to its knowledge that PIA’s plan was to transfer Ulico’s TFL business to Legion. (See Coleman v Norton, 289 AD2d 130 [1st Dept 2001] [triable issue of fact not raised by conclusory allegations that are substantially contradicted by documentary evidence]; McGrath v Parker, 4 AD3d 457 [2d Dept 2004].)
Wilson Elser’s characterization of its acts as clerical, and its objection to the use of the term “advice” to describe its communications with PIA about the termination of PIA’s relationship with Ulico, are belied by the documentary evidence and therefore also cannot serve to raise a bona fide issue of fact as to whether Wilson Elser provided substantive assistance to PIA with its plan. (See, e.g., Ulico exhibits OO — TT.)[5]
Nor is a triable issue of fact raised by the parties’ respective experts’ opinions on whether Wilson Elser breached a fiduciary duty. On undisputed facts, the issue of whether a fiduciary duty existed and was breached is a question of law to be determined by the court. (See Industrial Risk Insurers v Ernst, 224 AD2d 389 [2d Dept 1996]; see generally Palka v Servicemaster Mgt. Servs. Corp., 83 NY2d 579 [1994].)
To the extent that misuse of client confidences must be implicated in order to establish a breach of fiduciary duty under these circumstances, it is not proof of actual use of such confidences but the “reasonable probability” that they will be disclosed which is material. (See Jamaica Pub. Serv. Co. v AIU Ins. Co., 92 NY2d 631, 638 [1998]; Tekni-Plex, Inc. v Meyner & Landis, 89 NY2d 123 [1996]; Matter of Whitman Breed Abbott & Morgan v Oram, 300 AD2d 135, 136 [1st Dept 2002].) This rule “frees clients from apprehension that information imparted in *1063 confidence might later be used to their detriment, which, in turn, fosters the open dialogue between lawyer and client that is deemed essential to effective representation.” (Tekni-Plex, Inc., 89 NY2d at 131 [internal quotation marks and citation omitted].)
It is undisputed that as claims counsel for Ulico for over 10 years, Wilson Elser acquired information about Ulico’s premiums, reserves, claims histories, policy renewal dates, and strategy for handling claims. Significantly, in connection with its preliminary discussions with Legion about Legion’s becoming an insurer for the TFL program, PIA furnished Legion with similar information regarding “insureds, premiums, underwriting files, rates, loss runs, loss experience, [and] profitability.” All of this information was denominated “confidential” and forwarded under a confidentiality agreement, dated January 9, 1996 (Ulico exhibit GGG), which Wilson Elser drafted. (See Wilson Elser time sheet at 55, Ulico exhibit JJ.)
Any denial by Wilson Elser that it acquired confidential information about Ulico is untenable in light of this confidentiality agreement. Wilson Elser’s further claim that it did not disclose any client confidences (see Wilson Elser mem of law at 23) is not only wholly conclusory but also irrelevant, as the issue is whether there was a reasonable probability of disclosure. Even assuming the truth of Wilson Elser’s assertion that it did not set Legion’s rates or advise Legion or PIA about quotes, Wilson Elser clearly possessed confidential information about Ulico’s insureds — e.g., premiums, claims histories, and renewal policy dates — which would have been highly useful, if not critical, to Legion in competing with Ulico for renewals for those insureds.
The court accordingly holds that Wilson Elser fails to raise a triable issue of fact as to its liability for breach of fiduciary duty to Ulico, and that Ulico is entitled to partial summary judgment on this cause of action. In so holding, the court rejects Wilson Elser’s claim that no breach occurred because Wilson Elser was free to represent Ulico’s competitors. Wilson Elser emphasizes that PIA created and managed the TFL program; that the MGA Agreement between PIA and Ulico was never exclusive; that Wilson Elser acted as counsel for the entire TFL program; and that Ulico knew that Wilson Elser had represented other TFL insurers while also representing Ulico, at various times throughout the years of Ulico’s participation in the TFL program. (See Brennan reply affidavit HIT 9-16.) Focusing on its role in the TFL program as a whole, Wilson Elser fails to *1064 perceive its ethical obligations to Ulico in particular. While Wilson Elser had the right to represent competitors, as held above, it did not have the right to represent competitors in setting up a competing business to which it was contemplated that Ulico’s accounts would be transferred. Put another way, notwithstanding its view as to the primacy of PIA’s role in the TFL program, Wilson Elser did not have the right to prefer one client over another when the clients’ interests diverged. (See Felix v Balkin, 49 F Supp 2d 260, 270 [SD NY 1999].)
The court further rejects Wilson Elser’s claim that its retainer permitted it to undertake representation of PIA and Legion in establishing a competing business. The retainer provided that Wilson Elser shall not be prevented or barred from taking other employment of a similar or other legal character by reason of its employment for Ulico. This provision falls far short of the “full and complete disclosure” of a conflict of interest which would have been necessary to support a finding of informed consent even as to Wilson Elser’s dual representation of Legion and Ulico on coverage claims as to which their interests were potentially adverse. (See Guice v Charles Schwab & Co., 89 NY2d 31, 44 [1996], cert denied 520 US 1118 [1997].) Clearly, the retainer provision cannot be construed as an informed consent, assuming such consent would ever have been given, to Wilson Elser’s conduct in assisting PIA in transferring Ulico’s business to a competitor.
Nor is this a case in which Ulico impliedly ratified Wilson Elser’s acts, as Ulico obviously received no benefit from Wilson Elser’s assistance to PIA in establishing a competing business for Legion. (Cf. Standard Funding Corp. v Lewitt, 89 NY2d 546 [1997].) Contrary to Wilson Elser’s apparent further contention, PIA’s concern about Ulico’s financial stability or the lowering of its A.M. Best rating — even assuming it was fully warranted— cannot justify Wilson Elser’s breach of fiduciary duty. The court has considered Wilson Elser’s remaining defenses to the breach of fiduciary duty cause of action and finds them to be without merit.
As to damages, the only remedy that Ulico seeks on the instant motion for the breach is forfeiture or disgorgement of the fees it paid to Wilson Elser during the period of its disloyalty. It is well settled that “[o]ne who owes a duty of fidelity to a principal and who is faithless in the performance of his services is generally disentitled to recover his compensation, whether commissions or salary.” (Feiger, 41 NY2d at 928 [1977]; Bon *1065 Temps Agency v Greenfield, 212 AD2d 427 [1995], supra; Excelsior 57th Corp. v Lerner, 160 AD2d 407 [1990], supra.) Such forfeiture will be ordered notwithstanding that “the services were beneficial to the principal, or that the principal suffered no provable damage as a result of the breach of fidelity by the agent.” (Feiger, 41 NY2d at 928-929.) As the Court of Appeals has explained, proof of damages
“has never been considered to be an essential requirement for a cause of action founded on a breach of fiduciary duty. This is because the function of such an action, unlike an ordinary tort or contract case, is not merely to compensate the plaintiff for wrongs committed by the defendant but ... to prevent them, by removing from agents and trustees all inducement to attempt dealing for their own benefit in matters which they have undertaken for others, or to which their agency or trust relates.” (Diamond v Oreamuno, 24 NY2d 494, 498 [1969] [citation and internal quotation marks omitted].)
Contrary to Wilson Elser’s contention, the result is not different for breach of fiduciary duty claims against attorneys. This Department has opined that the “but for” standard of causation, applicable to a legal malpractice claim, is equally applicable to a claim for breach of fiduciary duty in the context of attorney liability. (Weil, Gotshal & Manges, 10 AD3d at 271.) However, this statement, which is dictum, was articulated where the breach of fiduciary duty and malpractice claims were “coextensive,” with both based on the allegation that the law firm had a conflict of interest that compromised its level of advocacy and contributed to a less favorable trial outcome than would have been achieved absent the conflict. (Id. at 271, 270.) Here, in contrast, the breach of fiduciary duty claim is based on a conflict of interest that does not involve professional negligence. Under this circumstance, no proof of damages is required where the remedy that is sought for the breach is forfeiture of compensation. (See Excelsior 57th Corp. v Lerner, 160 AD2d 407 [1990], supra.)
The court is also unpersuaded by Wilson Elser’s contention that Ulico’s claim for forfeiture of fees is barred by laches. Laches is an “equitable bar, based on a lengthy neglect or omission to assert a right and the resulting prejudice to an adverse party.” (Saratoga County Chamber of Commerce v Pataki, 100 NY2d 801, 816 [2003].) The record clearly shows that Ulico was informed by PIA in March 1997 that PIA would begin to quote *1066 TFL insurance for Legion as well as Ulico as of April 1997. (See Rattner deposition at 191-192, Wilson Elser exhibit A; O’Brien deposition at 108-109, Ulico exhibit E) Ulico also knew by mid-1997 that the Legion filings for regulatory approvals had been made. As to Ulico’s knowledge of Wilson Riser’s acts, the record shows that Ulico knew within a month or two of March 1997 that Wilson Elser had prepared the Legion filings. (O’Brien deposition at 109-110, Wilson Elser exhibit M.) Ulico also knew at least as of October 1997 that Wilson Elser would be Legion’s claims counsel. (See id. at 130-133.) However, the record is devoid of any evidence as to when Ulico acquired knowledge of any of Wilson Riser’s numerous other acts in assisting PIA with the transfer of Ulico’s TFL business to Legion. Nor does Wilson Elser claim that Ulico had long-standing knowledge of such other acts.[6] As Wilson Elser therefore makes no showing that Ulico had knowledge of the magnitude of Wilson Riser’s disloyalty, Wilson Elser fails to demonstrate that Ulico unreasonably delayed in asserting its claim of breach of fiduciary duty, or to raise a triable issue of fact in this regard.
In arguing that the breach of fiduciary cause of action is barred by laches, Wilson Elser emphasizes that Ulico knew that its retainer with Wilson Elser was not exclusive; that Ulico knew that Wilson Elser would also act as Legion’s claims counsel; and that Ulico was satisfied with Wilson Riser’s representation as its claims counsel. This argument misperceives the issue. On the breach of fiduciary claim, Ulico is seeking fee forfeiture based on Wilson Riser’s conflict of interest in aiding PIA in setting up a competing business, not on any disloyalty on Wilson Riser’s part in serving as Ulico’s claims counsel.
Finally, the court rejects Wilson Riser’s contention that the fees it received from Ulico were for claims handling, and that the fees therefore are not subject to forfeiture because they were not “related” to the breach of fiduciary duty alleged on the basis of its assisting PIA in transferring Ulico’s business to *1067 Legion. A long line of cases categorically holds that a disloyal employee forfeits “any right to compensation.” (Murray v Beard, 102 NY 505, 508 [1886]; see Feiger, 41 NY2d at 928-929; Kenneth D. Laub & Co. v Bear Stearns Cos., 278 AD2d 121, 122 [1st Dept 2000], lv denied 96 NY2d 709 [2001]; Soam Corp. v Trane Co., 202 AD2d 162, 163 [1st Dept 1994], lv denied 83 NY2d 758 [1994].) Forfeiture of compensation will, however, be limited to the period of the disloyalty. (See Maritime Fish Prods. v WorldWide Fish Prods., 100 AD2d 81 [1st Dept 1984], appeal dismissed 63 NY2d 675 [1984]; Henderson v Rep Tech, 162 AD2d 1028 [4th Dept 1990]; S. Tepfer & Sons v Zschaler, 25 AD2d 786 [2d Dept 1966].) A similar line of cases involving attorneys broadly holds that an attorney who violates the Code of Professional Responsibility by undertaking multiple representation of parties with conflicting interests is not entitled to legal fees for any services rendered. (See, e.g., Quinn v Walsh, 18 AD3d 638 [2d Dept 2005]; Pessoni v Rabkin, 220 AD2d 732 [2d Dept 1995]; see also Yannitelli v Yannitelli & Sons Constr. Corp., 247 AD2d 271 [1st Dept 1998], lv denied 92 NY2d 875 [1998].)[7] Indeed, in its most recent decision on fee forfeiture, this Department held that a fiduciary who was repeatedly disloyal throughout his tenure was obligated to forfeit all compensation, and was not entitled to apportionment of his salary or commissions “as to which disloyalty was not found.” (Matter of Blumenthal [Kings-ford], 32 AD3d 767, 768 [1st Dept 2006], lv denied 7 NY3d 718 [2006].)
The New York cases therefore do not support defendant’s position that fees are subject to forfeiture only for services as to which there was a breach of fiduciary duty. On the contrary, when an employee has engaged in a persistent pattern of *1068 disloyalty, the cases ordinarily order forfeiture without apportioning or limiting the forfeiture to fees for services performed with disloyalty.
Even where apportionment is appropriate, it will not be made if an employee receives a general salary, without a breakdown of fees for specific services, and there is therefore no basis for allocating the salary between services performed with and without disloyalty. In Schneider v Wien & Malkin LLP (5 Misc 3d 1011[A], 2004 NY Slip Op 51328[U], *18-19 [2004]), this court reviewed the authority on apportionment and concluded that no New York case has articulated a standard for determining when apportionment is proper, but that federal cases, which have been decided under and “predicted” New York law, have formulated a standard which is consistent with New York law. (See Phansalkar v Andersen Weinroth & Co., L.P., 344 F3d 184, 199-200 [2d Cir 2003].[8]) This standard limits forfeiture where
“(1) the parties had agreed that the agent will be paid on a task-by-task basis . . . , (2) the agent engaged in no misconduct at all with respect to certain tasks, and (3) the agent’s disloyalty with respect to other tasks ‘neither tainted nor interfered with the completion of’ the tasks as to which the agent was loyal.” (Id. at 205, quoting Musico v Champion Credit Corp., 764 F2d 102, 114 [2d Cir 1985].)
As further explained, “forfeiture cannot appropriately be limited to only some transactions . . . where the agreement calls for general compensation, and does not limit compensation to specific amounts paid for the completion of specific tasks.” (Phansalkar, 344 F3d at 208.)
Applying this standard in Schneider, this court held that a fiduciary who had engaged in “a persistent pattern of disloyalty” was required to forfeit aggregate monthly fees in their entirety *1069 because there was no breakdown for specific tasks covered by the fees and therefore no basis for apportioning the fees as between services performed with disloyalty and those as to which there was no disloyalty. (See 5 Misc 3d 1011[A], 2004 NY Slip Op 51328[U], *20.) A recent federal court case has similarly held, in a case governed by New York law, that an employee who breached his fiduciary duty by diverting a corporate opportunity to his employer’s competitor should forfeit the entire regular salary paid to him during the period of his disloyalty, but not commissions earned on projects he performed for the employer that did not involve any disloyalty. (See Design Strategy, Inc. v Davis, 469 F3d 284 [2d Cir 2006].)
In the instant case, Wilson Elser was paid regular monthly fees for its claim/litigation services in the amount of 31/2% of the premiums on policies on which claims were reported (up to a specified maximum), and was entitled to additional compensation if it served as attorney of record on cases or performed services requiring extraordinary supervisory involvment. (Retainer 11 3.) Ulico seeks forfeiture only of the regular monthly fees. These monthly fees were tantamount to a salary, without any breakdown for specific tasks. On the above authority, the forfeiture award should cover all regular monthly fees paid during the period of the disloyalty, as Wilson Elser’s acts in aiding PIA with the transfer of Ulico’s business to Legion were not isolated but part of a persistent pattern of disloyalty, and there is no basis on which to apportion Wilson Elser’s fees to services involving disloyalty.
That Ulico was generally satisfied with Wilson Elser’s claims handling is not a bar to a forfeiture award. The essential tenet of the fee forfeiture doctrine is that it requires forfeiture of fees paid to an employee even for services legitimately performed, where the employee was also repeatedly disloyal during the period for which the fees were paid. Here, moreover, the claims handling that Wilson Elser properly performed was not unrelated to its assistance to PIA with the transfer of Ulico’s business because, in the course of performing legal services for Ulico, Wilson Elser acquired confidential information which, as held above, could with reasonable probability have been used in enhancing Legion’s competitive position.
Wilson Elser’s final argument in opposition to Ulico’s claim for fee forfeiture is apparently that fees were paid to Wilson Elser for representing not only Ulico but also other insurers in the TFL program, and that, given Ulico’s small share of the *1070 risk, forfeiture of all of Wilson Elser’s fees would be “ridiculous.” (Wilson Elser mem of law at 33-34.) This argument, which was emphasized by Wilson Elser at oral argument but buried in its brief, is made without citation to any evidence in the record.[9] Elsewhere in the brief, Wilson Elser points out that PIA administered the program, deducted from the gross premium the fees to be paid to various parties including itself and Wilson Elser, directly paid Wilson Elser its claims handling fees, and then remitted the net premiums to Ulico. (See Wilson Elser mem of law at 8; Rattner deposition at 50-51, 54-55, Wilson Elser exhibit A.) However, Wilson Elser does not submit any evidence as to the amount of fees PIA paid Wilson Elser on behalf of any insurer other than Ulico or, indeed, any evidence that PIA even paid such fees. In short, Wilson Elser makes no showing that Ulico’s responsibility for fees was anything less than 3[1]/2% of the premiums on policies on which claims were reported, as expressly provided in paragraph three of the UlicoWilson Elser retainer.
The court accordingly holds that Ulico is entitled to forfeiture of fees paid for the period from January 1, 1996 through June 30, 1999. While Ulico claims that such fees total $3,420,612.05, the records on which Ulico relies do not show how this total was calculated. (See Ulico exhibits VW — YYY.) An assessment of damages will therefore be necessary to compute the amount of the fees to be forfeited.
Remaining Causes of Action
Wilson Elser cross-moves for summary judgment dismissing Ulico’s remaining causes of action.[10] As to the second cause of action for aiding and abetting, Wilson Elser claims that PIA itself did not breach a fiduciary duty to Ulico. As Wilson Elser *1071 points out, PIA’s relationship with Ulico was not exclusive, and it was not barred from quoting insurers other than Ulico or ceasing to quote or issue Ulico policies. However, Wilson Elser erroneously concludes that because PIA “was at liberty to do business with whomever it wished,” its acts in setting up a competing business to take over Ulico’s business could not have constituted a breach of fiduciary duty which Wilson Elser could have aided and abetted. (Brennan reply affidavit ¶ 62.) Wilson Elser cites no authority in support of this contention. Nor could it do so, as this contention ignores the substantial authority that a claim of breach of fiduciary duty may be premised on an employee’s establishment of a competing business while still employed where the employer’s confidences are used. (See cases cited at 1060-1061 n 4, supra.) Wilson Elser also fails to demonstrate as a matter of law that it did not provide “substantial assistance” to PIA in connection with the latter’s breach, as is required for liability for aiding and abetting. (See American Baptist Churches of Metro. N.Y. v Galloway, 271 AD2d 92, 101 [1st Dept 2000].) The branch of Wilson Elser’s motion to dismiss the second cause of action will therefore be denied.[11]
As to the third cause of action for malpractice, plaintiff alleges that Wilson Elser failed to properly defend Ulico on four claims involving Local 120, 322, 35 and 401 pension funds. (Second amended complaint U 81.) Ulico does not now assert the malpractice cause of action as to the Local 401 claim. As elaborated by Ulico on this motion, the funds sought coverage from Ulico under expired policies and from Legion under renewal policies for the same three claims involving the trustees’ alleged imprudent investment of trust assets. Ulico contends that Wilson Elser had a conflict of interest in representing both Ulico and Legion because the interest of each insurer was for the other insurer to provide coverage. It further alleges that Wilson Elser failed to assert coverage defenses on Ulico’s behalf based on the funds’ failure to give timely notice of claim as required by their policies. (Ulico reply mem of law at 54-55.)
In moving for summary judgment, Wilson Elser argues primarily that Ulico was responsible for its own coverage decisions. In support of this contention, Wilson Elser cites the testimony of Ulico’s in-house director of claims that she evaluated coverage issues and had the responsibility to make the *1072 “final determination” as to whether to provide coverage. (See deposition of Karen Sheppard at, e.g., 19, 66-68, Wilson Elser exhibit L.) Wilson Elser ignores the testimony of this same witness that Wilson Elser’s responsibility was to give advice on coverage issues (id. at 18-19) and that Ulico “relied heavily” on Wilson Elser’s advice. (Id. at 103.)
To the extent that Wilson Elser addresses the merits of Ulico’s claim that it did not assert coverage issues on Ulico’s behalf, it shows only that it undertook to investigate the notice issue as to the Local 120 claim and served a letter reserving its rights as to this claim. (See Ulico exhibit OOO; Wilson Elser exhibit S.) Wilson Elser does not show that it asserted coverage issues as to the Local 120 claim or that it preserved coverage issues based on notice as to the Local 322 and 35 claims.[12] On the contrary, the evidence shows that in March 1999, well into its period of disloyalty to Ulico, Wilson Elser requested authority to resolve the three claims for a total of up to $4 million. (Ulico exhibit TTT.) Contrary to Wilson Elser’s apparent further contention, the fact that the claims were settled a few months later for $3.6 million does not show that the notice defense was without merit under these circumstances in which Ulico had relied on Wilson Elser for advice on coverage and for preservation of its coverage defenses.
The court is unpersuaded by Wilson Elser’s further contention that it had no conflict of interest because it represented only Ulico at the time notice of the claims was given. While the record is unclear as to whether a Legion policy was in effect at the time Ulico received notice of the Local 120 claim, there is evidence that notice of the Local 322 and 35 claims was received before Legion policies were in effect. However, Wilson Elser continued to represent Ulico on these claims after the Legion policies were issued, and makes no showing that all acts to evaluate and, if necessary, preserve, the notice defenses were made prior to assertion of any claim against the Legion policies and thus prior to its dual representation of Legion.
The court notes that, in moving for summary judgment, Wilson Elser did not address the merits of Ulico’s claim that notice of the three claims was untimely. Thus, the burden did not *1073 shift to Ulico on that issue. The court has considered Wilson Elser’s remaining bases for dismissal of the malpractice cause of action and finds them to be without merit. This branch of the motion will accordingly be denied.
As to the fourth and fifth causes of action for tortious interference with contractual relations, Ulico alleges that Wilson Elser “assisted PIA and Legion in establishing and building Legion’s trustee and fiduciary liability business to the material detriment of Ulico, and wrongfully and without justification intentionally interfered with and procured PIA’s breach of its contract with Ulico.” (Second amended complaint 11 89.) It further alleges that “[b]y assisting PIA and Legion, and/or otherwise participating in the making of misrepresentations about Ulico to both regulators and current policyholders, [Wilson Elser] wrongfully and without justification intentionally interfered with and procured PIA’s breach of its contract with Ulico.” (Id. ¶ 90.)[13] As to its fifth cause of action for tortious interference with prospective economic advantage, the complaint alleges that “Ulico had contractual relationships with policyholders and the potential of other contractual relationships with prospective policyholders under which Ulico had the reasonable expectation of current and future premium income” (id. ¶ 95), and that Wilson Elser “improperly, wrongfully and without justification interfered with Ulico’s reasonable expectation of economic advantage or benefits from its prospective policyholders.” (Id. ¶ 97.)
It is well settled that
“where there is an existing, enforceable contract and a defendant’s deliberate interference results in a breach of that contract, a plaintiff may recover damages for tortious interference with contractual relations even if the defendant was engaged in lawful behavior. Where there has been no breach of an existing contract, but only interference with prospective contract rights, however, plaintiff must show more culpable conduct on the part of the defendant.” (NBT Bancorp v Fleet/Norstar Fin. Group, 87 NY2d 614, 621 [1996] [citations omitted]; Guard- *1074 Life Corp. v Parker Hardware Mfg. Corp., 50 NY2d 183 [1980].)
Interference with contractual relations “consists of four elements: (1) the existence of a contract between plaintiff and a third party; (2) defendant’s knowledge of the contract; (3) defendant’s intentional inducement of the third party to breach or otherwise render performance impossible; and (4) damages to plaintiff.” (Kronos, Inc. v AVX Corp., 81 NY2d 90, 94 [1993].) Tortious interference with prospective economic relations requires an additional showing that “plaintiff would have entered into an economic relationship but for the defendant’s wrongful conduct.” (Vigoda v DCA Prods. Plus, 293 AD2d 265, 266 [1st Dept 2002].)
Wilson Elser argues that the tortious interference with contractual relations cause of action must fail because PIA’s contract with Ulico was not exclusive and it therefore could not have breached the contract by entering into a contractual relationship with Legion. This contention is without merit. A tortious interference claim may be premised on an at-will or voidable contract. (See generally Guard-Life Corp. v Parker Hardware Mfg. Corp., 50 NY2d 183 [1980], supra.) Further, Wilson Elser fails on this record to demonstrate as a matter of law that PIA’s acts in transferring Ulico’s business to Legion did not breach the MGA Agreement between PIA and Ulico.
Wilson Elser also argues that the evidence does not show that it induced PIA to breach the contract. Wilson Elser submits evidence that PIA initially decided to do business with Legion on its own and without any advice from Wilson Elser. (See, e.g., Rattner deposition at 80-81, Wilson Elser exhibit A; Xanders deposition at 365, Wilson Elser exhibit B.) However, Wilson Elser fails to cite any legal authority on the issue of whether Wilson Elser’s numerous subsequent acts in connection with the establishment of a competing business for Legion rose to the level of “an inducement to breach of contract,” or whether such acts at most constituted “assistance” to PIA that should be considered only on Ulico’s aiding and abetting claim. On this inadequate briefing, the court declines to dismiss the tortious interference with contract cause of action.
The court reaches a different result as to the tortious interference with prospective economic advantage cause of action. Given the extensive evidence of PIA’s intent to replace Ulico with Legion (see, supra at 1054), the court finds that Ulico cannot demonstrate that “but for” Wilson Elser’s alleged inducement of *1075 the breach of the Ulico-PIA MGA Agreement, that agreement would not have been breached or Ulico’s business transferred to Legion. This cause of action will accordingly be dismissed.
Finally, on this record, the court cannot find as a matter of law that Wilson Elser’s breach of fiduciary duty did not involve the moral culpability necessary to support an award of punitive damages. (See Walker v Sheldon, 10 NY2d 401 [1961]; Design Strategy, Inc., 469 F3d at 302.) This claim will therefore stand.
It is accordingly hereby ordered that plaintiff’s motion is granted to the following extent: it is ordered that plaintiff is granted partial summary judgment as to liability on its first cause of action for breach of fiduciary duty; and it is further ordered that plaintiff is entitled to forfeiture of fees paid to defendant for the period from January 1, 1996 through June 30, 1999; and it is further ordered that an assessment of the amount of such fees is directed to be held at the time of trial or upon the final resolution of this action; and it is further ordered that defendant’s cross motion for summary judgment is granted only to the extent of dismissing plaintiffs fifth cause of action for tortious interference with prospective economic advantage.

. Dismissal of the breach of fiduciary duty cause of action would not, in any event, necessarily have practical significance. If the cause of action were dismissed, the malpractice cause of action would proceed based not only on Wilson Elser’s dual representation of Ulico and Legion on coverage claims but also on Wilson Elser’s disloyalty in assisting PIA with the transfer of Ulico’s business to Legion. A claim for forfeiture of fees based on such disloyalty could also be made under the rubric of the malpractice cause of action. (See Mecca v Shang, 258 AD2d 569 [1999], supra.) Moreover, contrary to Wilson Elser’s apparent assumption, the “but for” standard of proof that is typically applicable to proof of damages in a malpractice cause of action would not apply to the fee forfeiture claim, as such a claim does not require proof of damages. (See infra at 1065.)
*1058 The standard of proof that will apply to the other damages claimed as a result of the disloyalty — i.e., damages for lost profits as a result of the transfer of Ulico’s business to a competitor — remains a matter for determination whether the damages are sought under a breach of fiduciary duty or a malpractice cause of action. The malpractice “but for” standard of proof has traditionally been applied to claims for damages resulting from loss of, or achievement of a less favorable outcome in, a lawsuit. The issue in this action is whether this standard should also apply to consequential damages not resulting from professional negligence. As such damages are not sought on this motion, however, the parties have not addressed, and the court need not determine, the issue.

. For example, in Estate of Re v Kornstein Veisz & Wexler (958 F Supp 907, 924 n 7 [SD NY 1997], appeal dismissed 159 F3d 1346 [2d Cir 1998]), the federal court, applying New York law but without citation to relevant New York cases, permitted plaintiff’s breach of fiduciary duty claim to be maintained against plaintiffs prior attorneys who received numerous referrals from defendant’s law firm and who may have pursued plaintiffs claims with “diminished rigor” as a result of this conflict of interest. This claim therefore could have been asserted as malpractice. Permitting the claim to proceed on a breach of fiduciary duty theory rather than a malpractice theory had considerable practical significance, as the court applied a lesser standard than the “but for” standard of causation required under New York law for malpractice claims for damages resulting from a bad outcome in litigation.

. DR 5-105 (a) provides:
“A lawyer shall decline preferred employment if the exercise of independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the preferred employment, or if it would be likely to involve the lawyer in representing differing interests, except to the extent permitted under subdivision (c) of this section.” DR 5-105 (c) provides:
“In the situations covered by subdivisions (a) and (b) of this section, a lawyer may represent multiple clients if a disinterested lawyer would believe that the lawyer can competently represent the interest of each and if each consents to the representation af *1060 ter full disclosure of the implications of the simultaneous representation and the advantages and risks involved.”

. A considerable body of case law involving nonattorneys holds that an employee who creates a competing business while still employed breaches a fiduciary duty to the employer if the employee uses the employer’s time and facilities or the employer’s confidential or proprietary secrets. (See Feiger v Iral Jewelry, 41 NY2d 928 [1977]; Don Buchwald & Assoc., Inc. v Marber-Rich, 11 AD3d 277 [1st Dept 2004]; Westcom Corp. v Dedicated Private Connections, *1061 LLC, 9 AD3d 331 [1st Dept 2004]; CBS Corp. v Dumsday, 268 AD2d 350 [1st Dept 2000]; Bon Temps Agency v Greenfield, 212 AD2d 427 [1st Dept 1995].)

. For example, Ulico exhibit TT, a facsimile from Gerald Axel of PIA to Thomas Wilson of Wilson Elser, dated February 5, 1998, attaches correspondence on the termination and states: “We look forward to your guidance as to how we should proceed at this point.”

. Wilson Elser does not submit evidence as to the dates on which Ulico acquired knowledge of any of its acts other than the preparation of the Legion filings and its agreement to serve as Legion’s claims counsel. Indeed, Wilson Elser does not submit evidence even as to when Ulico first learned that Wilson Elser would not merely also serve as Legion’s claims counsel but that there was a conflict of interest between Ulico and Legion on specific claims — i.e., that four unions had asserted substantial claims for coverage against both Ulico and Legion, and that Wilson Elser was representing both Ulico and Legion on these claims, notwithstanding the potential conflict between them over whose coverage would apply.

. Defendant cites two cases for the narrower proposition that an attorney may be required to forfeit fees only for conduct alleged to have constituted a breach of fiduciary duty. (Grutman Katz Greene & Humphrey v Goldman, 251 AD2d 7, 8 [1st Dept 1998] [dismissing counterclaim for disgorgement in action for enforcement of charging lien, on the ground that “plaintiff was not discharged for cause nor was it seeking to collect or retain compensation for the activity alleged to have constituted a breach of its fiduciary duty”]; Decolator, Cohen & DiPrisco v Lysaght, Lysaght & Kramer, 304 AD2d 86, 91 [1st Dept 2003] [holding in fee dispute between attorneys that “(a) lawyer forfeits his entire fee due to misconduct only where the misconduct relates to the representation for which the fees are sought”].) These cases are not controlling as they appear to have involved an attorney’s misconduct in handling a specific representation or legal matter not, as here, a conflict of interest beyond the scope of a specific representation which affected the entire attorney-client relationship.

. The Schneider court reasoned that, notwithstanding the categorical language in the cases cited above that a disloyal employee should forfeit all fees, other New York cases have left open the possibility that apportionment may be proper in appropriate circumstances. (See 5 Misc 3d 1011[A], 2004 NY Slip Op 51328[U], *19 [and cases cited therein].) The Appellate Division’s recent decision is not to the contrary. While it held that apportionment was not proper “[i]n light of [the employee’s] repeated disloyalty throughout his tenure,” it involved a fiduciary’s aggravated conduct in repeatedly making unsubstantiated payments to himself, and in fact cited in support of its holding the federal case, Phansalkar v Andersen Weinroth & Co., L.P. (344 F3d 184, 205 [2003], supra), which refined the apportionment standard. (See Matter of Blumenthal, 32 AD3d at 768.)

. The argument is set forth in its entirety as follows:
“Finally, since Ulico’s share of risk was $2 million of a total of $10 million, the balance of which was provided by the program’s reinsurers, it would be ridiculous to assert that Ulico should receive the entirety of Wilson Elser’s fees — which were based on a flat-fee percentage of premiums written on the entire TFL program — even if Ulico were found to be entitled to disgorgement. Wilson Elser’s fee arrangement encompassed its role in representing the interests of the reinsurers, the insureds, and PIA, among others, none of whom complained that Wilson Elser was disloyal, or committed legal malpractice.” (Wilson Elser mem of law at 33-34.)

. Although the motion by its terms requests partial summary judgment, it appears to seek dismissal of all of plaintiffs claims and will be treated as a motion for such relief.

. To the extent that arguments for dismissal of this or the remaining causes of action are not specifically discussed in this opinion, they are deemed rejected.

. While Wilson Elser asserts that it sent a letter reserving Ulico’s rights to deny coverage of the Local 35 claim, Wilson Elser does not produce the letter and relies instead on deposition testimony which refers to the letter but does not state the basis on which Ulico reserved its rights. (See Sheppard deposition at 135, Wilson Elser exhibit L; Wilson Elser mem of law at 53.)

. Ulico clarifies on the instant motion that its tortious interference with contract claim alleges interference with the MGA Agreement between PIA and Ulico, not interference with any contract between Ulico and an insured. (Ulico reply mem of law at 61 n 13.)