OPINION OF THE COURT
Tom, J.P
In this action for professional malpractice arising out of defendant law firm’s[1] representation of plaintiff Ulico Casualty Company, Supreme Court awarded plaintiff partial summary judgment as to liability on its first cause of action, finding that defendant breached its fiduciary duty by assisting efforts to establish nonparty Legion Insurance Company in a competing business and lure away plaintiffs customers. The court directed that defendant forfeit the fees it received for the duration of the firm’s breach and directed an assessment. While we agree that the complaint states viable grounds for recovery, our analysis proceeds on a different basis, and we conclude that defendant’s liability is limited to the claim for legal malpractice.
Plaintiff specializes in the provision of trustee and fiduciary liability (TFL) insurance, marketing its products primarily to unions and their managed benefit plans. Defendant served as plaintiffs claims counsel from April 1986 through June 1999 under a written retainer agreement. The firm also rendered legal services jointly to plaintiffs managing general agent, which conducts its operations in New York as Professional Intermediaries Associates, Inc. and in New Jersey as Professional Indemnity Agency, Inc. (collectively, PIA).
Defendant’s relationship with PIA, as counsel, predates the relationship of either entity with plaintiff. TFL insurance was devised by Thomas Wilson, a partner in the law firm, and Marshall Rattner, PIA’s principal. PIA drafted the first TFL policy and fostered acceptance of the concept by syndicates at Lloyd’s of London. PIA provides TFL policies to a number of insurers, also functioning as their managing general agent, and it is undisputed that PIA’s management agreement with plaintiff was not exclusive.
*5 Defendant’s retainer agreement with plaintiff similarly contains a provision that the firm’s representation of the insurance company, as claims counsel, is nonexclusive, stating that defendant “shall devote all the time necessary to the business of the Company, but shall not by this retainer be prevented or barred from taking other employment of a similar or other legal character by reason of the employment herein specified.” The firm, without objection from plaintiff, functioned as claims counsel for other insurers, including Lloyd’s.
This dispute has its origins in 1995, when PIA decided to establish a business relationship with Legion Insurance Company. The motivation for this step, as expressed by Marshall Rattner, was that the quality of plaintiffs operation was compromised by “poor people, poor management, poor decisions, basically a company just riddled with incompetence, and we knew we had to get out of there before it took us down.” PIA planned to offer its customers quotes on policies issued by both plaintiff and Legion. After reaching an agreement in principle with Legion, PIA asked defendant to confirm that PIA could serve as Legion’s managing general agent. PIA also asked defendant to confirm that the law firm could act as claims counsel for Legion. In both cases, defendant informed PIA that the proposed activities were not barred by any existing relationship with plaintiff, which was nonexclusive. Finally, defendant was asked not to disclose PIA’s intention to underwrite insurance for Legion, a request that defendant honored.
Defendant filed the necessary paperwork to permit Legion to offer TFL insurance in all 50 states and the District of Columbia. Included in the papers filed was a continuity endorsement that facilitated the policyholder’s transition between insurers by treating the Legion policy as a renewal of the one issued by plaintiff. Also filed was an endorsement designed to enhance Legion’s coverage over the TFL insurance being offered by plaintiff. In accordance with PIA’s instructions, defendant delayed filing applications in Pennsylvania and California until last because PIA knew that these filings would be communicated to plaintiff by a reporting service to which it subscribed. By mid-1997, plaintiff had become aware that defendant had filed applications nationally on Legion’s behalf, and by early fall plaintiff had learned that the firm was acting as Legion’s claims counsel. In early February 1998, plaintiff sent a 30-day notice to PIA terminating its management agreement. By notice effective June 30, 1999, plaintiff ended its association with defendant, *6 stating it had recently received information indicating that the firm “has breached its fiduciary duties to Ulico as counsel and has acted in a manner directly contrary to our interests.”
In the year prior to defendant’s discharge as claims counsel, at a time when the firm was also acting as claims counsel to Legion Insurance Company, three claims were made under Ulico policies by union benefit funds.[2] The benefit funds subsequently replaced their Ulico policies with TFL insurance policies obtained from Legion. Defendant sent reservation of rights letters to the funds on behalf of plaintiff, and plaintiff ultimately settled the claims, which were paid after Ulico severed its relationship with defendant.
The second amended complaint asserts a cause of action for malpractice. This claim encompasses the three benefit fund claims and alleges that, in handling these matters, defendant failed to exercise that degree of diligence and care normally possessed by attorneys of ordinary skill and knowledge. In connection with defendant’s role in assisting PIA to set up Legion as a competitor, the complaint also asserts causes of action for breach of fiduciary duty, aiding and abetting PIA’s breach of fiduciary duty, tortious interference with plaintiffs contractual relations and tortious interference with its prospective economic advantage. However, the complaint does not confine the malpractice cause of action to defendant’s dual representation of plaintiff and Legion on the benefit fund claims, but incorporates the same factual allegations advanced in support of the causes of action for breach of fiduciary duty and aiding and abetting PIA’s breach of fiduciary duty. The complaint seeks forfeiture of the amount received by defendant as compensation for its breach of fiduciary duty and $3.5 million for legal malpractice. However, all causes of action seek the same amount, “believed to be in excess of $25 million,” in consequential damages, together with punitive damages.
Plaintiff moved for summary judgment on its cause of action for breach of fiduciary duty and for an order directing defendant to turn over legal fees received during the period of its disloyalty. Defendant cross-moved for summary judgment dismissing the complaint.
Supreme Court found the complaint meritorious. It declined to dismiss the malpractice cause of action on the basis of *7 conflicting deposition testimony concerning whether defendant had preserved its notice and coverage defenses as to the three benefit fund claims before requesting authority to settle them for as much as $4 million. The court further declined to dismiss plaintiffs breach of fiduciary duty cause of action as duplicative of its malpractice cause of action. It reasoned that the two claims arose from different facts—the malpractice claim from defendant’s dual representation of plaintiff and Legion as claims counsel, and the breach of fiduciary duty claim from defendant’s assistance to PIA in transferring plaintiffs business to Legion. The court denied dismissal of the claim for aiding and abetting PIA’s breach of fiduciary duty, reasoning that defendant failed to demonstrate its lack of “ ‘substantial assistance’ to PIA in connection with the latter’s breach” (16 Misc 3d 1051, 1071 [2007]). Finally, the court declined to dismiss plaintiffs claim for tortious interference with contractual relations, rejecting defendant’s assertion that PIA’s contract with plaintiff was nonexclusive and noting that a tortious interference claim can be based on even an at-will or voidable contract. However, the court granted the cross motion to the extent of dismissing plaintiffs claim for tortious interference with prospective economic advantage, a ruling with which plaintiff does not take issue and the propriety of which is not before us.
As to plaintiffs motion for partial summary judgment, the court rejected defendant’s contention that it was unaware of PIA’s intention to effect a transfer of plaintiff’s clients to Legion, identifying two pieces of documentary evidence establishing that defendant knowingly assisted PIA’s efforts. The court therefore granted partial summary judgment to plaintiff on its first cause of action for breach of fiduciary duty and granted plaintiffs motion to recover legal fees to the extent of directing the assessment and forfeiture of fees paid to defendant from January 1, 1996 through June 30, 1999, the time period during which the court found defendant to have been disloyal to plaintiff.
It is defendant’s position that the retainer agreement limits its representation to “claims counsel” and reflects the parties’ understanding that defendant would provide similar representation to other companies offering TFL insurance coverage. Defendant contends that, in the absence of evidence of its misuse of client confidences, there is no basis upon which to find that the law firm breached its professional duty to plaintiff by providing legal assistance to PIA in establishing Legion as a provider of TFL insurance.
*8 We agree that plaintiff has stated a viable basis for seeking recovery against defendant. The complaint alleges that in representing plaintiff on the three claims filed by union benefit funds under Ulico policies, defendant acted under a conflict of interest due to its simultaneous representation of plaintiff and Legion, which had issued TFL policies to the benefit funds when coverage under their Ulico policies expired. The complaint asserts that, as a result of defendant’s divided loyalties, the law firm’s professional judgment was impaired, causing it to recommend that Ulico provide coverage despite the expiration of its policies prior to the date on which the claims were filed (see Greene v Greene, 47 NY2d 447, 451 [1979]).
We further agree that the cause of action asserted as breach of fiduciary duty is not redundant because it is based upon different facts than those underlying the cause of action alleging legal malpractice (see Estate of Nevelson v Carro, Spanbock, Kaster & Cuiffo, 290 AD2d 399, 400 [2002]). However, we do not agree that plaintiff may seek to recover damages for defendant’s breach of fiduciary duty on legal grounds less rigorous than those required for recovery under a theory of legal malpractice. Nor do we perceive any reason to summarily decide the question of the forfeiture of defendant’s legal fees on a preliminary record.
However the various claims asserted by plaintiff are denominated in the complaint, all arise from defendant’s failure to adhere to its duty to accord undivided loyalty to its client. It is no defense to defendant’s alleged violation of its professional duty that it reserved the right to accept “other employment of a similar or other legal character” during its representation of plaintiff. It is axiomatic that the relationship of attorney and client is fiduciary: “The attorney’s obligations, therefore, transcend those prevailing in the commercial market place” (Matter of Cooperman, 83 NY2d 465, 472 [1994]), and a firm may not circumscribe its professional obligations by purporting to transform the attorney-client relationship into an arm’s length commercial affiliation. Thus, a law firm may not evade its professional responsibilities to a client by the expedient of inserting contractual limitations on the firm’s ethical duties into the retainer agreement (see Swift v Ki Young Choe, 242 AD2d 188, 192 [1998], citing Code of Professional Responsibility DR 6-102 [a] [22 NYCRR 1200.31 (a)]).
Because the attorney-client relationship is both contractual and inherently fiduciary, a complaint seeking damages alleged *9 to have been sustained by a plaintiff in the course of such a relationship will often advance one or more causes of action based upon the attorney’s breach of some contractual or fiduciary duty owed to the client. The courts normally treat the action as one for legal malpractice only (see e.g. Brooks v Lewin, 21 AD3d 731, 733 [2005], lv denied 6 NY3d 713 [2006] [claims for breach of fiduciary duty and punitive damages dismissed on motion]; Tabner v Drake, 9 AD3d 606, 611 [2004] [contract claim dismissed as asserting no obligation beyond fiduciary duty owed to client]; Nevelson, 290 AD2d at 400 [claims for breach of fiduciary duty and breach of contract predicated on same allegations and seeking identical relief to malpractice cause of action dismissed as redundant]; Sage Realty Corp. v Proskauer Rose, 251 AD2d 35, 38, 39 [1998] [contract and fraudulent misrepresentation claims dismissed as redundant of malpractice claim; error to dismiss conflict of interest claim as precluded by prior decision]).
Defendant contends that the breach of fiduciary duty claim should be dismissed as duplicative of the legal malpractice claim. Plaintiff’s second amended complaint adequately sets forth that the breach of fiduciary duty claim relates to defendant’s actions in helping Legion set up a competing business, whereas the malpractice claim relates to its handling of the claims as plaintiffs claims counsel. Therefore, the two claims are not “premised on the same facts and seeking . . . identical relief” (Weil, Gotshal & Manges, LLP v Fashion Boutique of Short Hills, Inc., 10 AD3d 267, 271 [2004]), and both can be asserted.
It is well settled that the relationship of client and counsel is one of “unique fiduciary reliance” (Cooperman, 83 NY2d at 472) and that the relationship imposes on the attorney “[t]he duty to deal fairly, honestly and with undivided loyalty . . . including maintaining confidentiality, avoiding conflicts of interest, operating competently, safeguarding client property and honoring the clients’ interests over the lawyer’s” (id.). Thus, any act of disloyalty by counsel will also comprise a breach of the fiduciary duty owed to the client. In Greene (47 NY2d at 451), the Court of Appeals noted that “attorneys historically have been strictly forbidden from placing themselves in a position where they must advance, or even appear to advance, conflicting interests,” a rule that is intended to preclude breach of the attorney’s duty of loyalty. As this Court has recognized, a law firm may simultaneously represent the competing interests *10 of two opposing clients only with the clients’ consent after full disclosure of the dual representation and its consequences (see e.g. Matter of Metropolitan Transp. Auth. [Cohen], 222 AD2d 340, 341 [1995]; Code of Professional Responsibility DR 5-105 [22 NYCRR 1200.24]).
It is clear that defendant’s surreptitious advancement of the conflicting interests of PIA and Legion in setting up Legion as a competitor to plaintiff might be construed as a violation of the firm’s fiduciary duty to its client. However, violation of the ethical constraint against dual representation does not, without more, support a claim for recovery of damages (Schwartz v Olshan Grundman Frome & Rosenzweig, 302 AD2d 193, 199 [2003]); to recover against an attorney, a client or third party is required to prove both the breach of a duty owed to it (see Prudential Ins. Co. of Am. v Dewey, Ballantine, Bushby, Palmer & Wood, 80 NY2d 377 [1992]) and damages sustained as a result (see Estate of Steinberg v Harmon, 259 AD2d 318 [1999]; Senise v Mackasek, 227 AD2d 184, 185 [1996]).
Recovery for professional malpractice against an attorney requires proof of three elements: “(1) the negligence of the attorney; (2) that the negligence was the proximate cause of the loss sustained; and (3) proof of actual damages” (Mendoza v Schlossman, 87 AD2d 606, 607 [1982]). It requires the plaintiff to establish that counsel “failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession” and that “ ‘but for’ the attorney’s negligence” the plaintiff would have prevailed in the matter or would have avoided damages (AmBase Corp. v Davis Polk & Wardwell, 8 NY3d 428, 434 [2007]; see Barbara King Family Trust v Voluto Ventures LLC, 46 AD3d 423, 424 [2007]).
An action for breach of fiduciary duty is governed by a considerably lower standard of recovery. It requires only that the plaintiff identify “a conflict of interest which amounted merely to a substantial factor in [the plaintiffs] loss” (Estate of Re v Kornstein Veisz & Wexler, 958 F Supp 907, 924 [SD NY 1997], appeal dismissed 159 F3d 1346 [2d Cir 1998] [table; text at 1998 WL 477166, 1998 US App LEXIS 18632] [internal quotation marks and citation omitted]). However, this Court has noted that, in the context of an action asserting attorney liability, the claims of malpractice and breach of fiduciary duty are governed by the same standard of recovery (Weil, Gotshal, 10 AD3d at 271).
In the matter at bar, as in Weil, Gotshal, we conclude that to recover under a claim for damages against an attorney arising *11 out of the breach of the attorney’s fiduciary duty, the plaintiff must establish the “but for” element of malpractice, irrespective of how the claim is denominated in the complaint. Plaintiff sustained a loss of income when some of its insureds decided to replace their TFL policies with coverage afforded by Legion instead of renewing their policies with plaintiff. However, while defendant is alleged to have filed papers with state insurance departments enabling Legion to offer TFL insurance, Legion previously performed the majority of such filings on its own and could have done so in this instance. Plaintiff has not demonstrated that it would not have sustained a loss of business but for defendant’s assistance to Legion and has not established its entitlement to recover damages against defendant as to this cause of action. Thus, it should have been dismissed.
By the same reasoning, the inability to establish that PIA did not independently reach its decision to breach its managing general agent agreement with plaintiff is fatal to plaintiff’s cause of action for tortious interference with contractual relations. However, we reject defendant’s contention that this claim should be dismissed because PIA did not breach the contract. Although the agency agreement is nonexclusive, it cannot be said that, as a matter of law, a trier of fact would be precluded from finding that PIA’s efforts to replace plaintiffs policies with those issued by Legion represent a breach of the covenant of good faith and fair dealing inherent in all contracts (see Dalton v Educational Testing Serv., 87 NY2d 384, 389 [1995]; Ansonia Assoc. Ltd. Partnership v Public Serv. Mut. Ins. Co., 257 AD2d 84, 87 [1999]). Be that as it may, Supreme Court noted “extensive evidence of PIA’s intent to replace Ulico with Legion” (16 Misc 3d at 1074), without any prompting on defendant’s part, and we perceive no reason to disturb this finding.[3] Because intent to induce a breach of contract is an element of tortious interference with contractual relations (see Kronos, Inc. v AVX Corp., 81 NY2d 90, 94 [1993]), this claim should have been dismissed.
Viability of the cause of action for aiding and abetting the breach of PIA’s fiduciary duty requires a prima facie showing of a fiduciary duty owed to plaintiff by PIA, a breach of that duty, and defendant’s substantial assistance to PIA in effecting the breach, together with resulting damages (see Kaufman v Cohen, 307 AD2d 113, 125 [2003]). Assuming for the purposes of sum *12 mary judgment that PIA owed plaintiff a fiduciary duty and that its assistance to Legion comprised a breach of such duty, plaintiff has failed to make a prima facie showing that defendant provided substantial assistance to Legion’s endeavors so as to subject the law firm to liability (see Willis Re Inc. v Hudson, 29 AD3d 489, 490 [2006]). As noted, the filings performed by defendant on Legion’s behalf readily could have been performed by Legion itself; and in filing last in those states where it would be most likely to come to plaintiffs attention, defendant did no more than carry out the instructions of its client. The allegation contained in the complaint that defendant provided “substantial assistance to PIA in building Legion’s trustee and fiduciary liability insurance program with Ulico’s current and prospective customers” is made only upon information and belief and is unsupported by the record. The assertion that defendant used confidential information acquired during its representation of plaintiff fails to state the nature of that information or how it was misused, and plaintiff fails to demonstrate that defendant had any involvement in deceptive marketing practices alleged to have been employed by PIA. Plaintiff merely suggests that because defendant rendered legal advice to PIA during the time PIA sought to divert plaintiffs business to Legion, defendant must have been complicit in any breach of any fiduciary duty that plaintiff might have been owed. Innuendo does not constitute an evidentiary showing sufficient to withstand defendant’s cross motion (see Zuckerman v City of New York, 49 NY2d 557, 562 [1980]), and the cause of action for aiding and abetting should have been dismissed.
The forfeiture of defendant’s legal fees directed by Supreme Court involves different considerations. Unlike a cause of action for breach of fiduciary duty, the circumstances of an attorney’s discharge by a client may afford a basis for recoupment of legal fees independent of any claim of legal malpractice. Because the attorney-client relationship demands “undivided loyalty and devotion on the part of the attorney” (Campagnola v Mulholland, Minion & Roe, 76 NY2d 38, 43 [1990]), it is settled that an attorney who is discharged by a client for cause “has no right to compensation or a retaining lien, notwithstanding a specific retainer agreement” (id. at 44; Teichner v W & J Holsteins, 64 NY2d 977, 979 [1985]). However, unless the question of the attorney’s disloyalty can be resolved on the record (see e.g. Griffin v Sciame Constr. Co., 267 AD2d 100 [1999] [breach of the duty of undivided loyalty found on prior appeal]), *13 a hearing is required to determine whether discharge was for cause (Matter of Weitling, 266 NY 184, 187 [1935]; Genton v Arpeggio Rest., 232 AD 2d 274 [1996]; Andreiev v Keller, 168 AD2d 528, 529 [1990]).[4]
From a procedural perspective, where, as in the cited cases, the only matter before a court is a motion implicating an attorney’s right to a retaining lien or entitlement to fees, the question of forfeiture is merely ancillary to the action and appropriately decided in that context. Where, as here, forfeiture is part of the recovery sought in the action, the issue of whether the attorney should be required to disgorge the compensation received during the period of alleged disloyalty is properly entertained on a full record after trial (see e.g. Soam Corp. v Trane Co., 202 AD2d 162, 163 [1994], Iv denied 83 NY2d 758 [1994]; Maritime Fish Prods, v World-Wide Fish Prods., 100 AD2d 81, 91 [1984], appeal dismissed 63 NY2d 675 [1984]).
The issue of an attorney’s breach of the duty of loyalty to a client implicates the scope of that duty—for instance, whether it was limited to a particular function such as claims processing, as defendant herein contends, or whether it extended to general matters or involved misuse of confidential information acquired in the course of the attorney-client relationship, as Supreme Court apparently concluded. Such considerations are inherently factual, they are not resolved by the record before us, and it was error to summarily grant plaintiff recovery of its legal fees. Whether defendant improperly handled claims filed under Ulico policies due to a conflict of interest remains to be decided, and the related question of whether defendant was discharged for cause on that basis is properly reserved for trial.
To impose punitive damages, the law requires “intentional or deliberate wrongdoing, aggravating or outrageous circumstances, fraudulent or evil motive, or conscious act in willful and wanton disregard of another’s rights” (Pearlman v Friedman Alpren & Green, 300 AD2d 203, 204 [2002]). Defendant’s conduct lacks the component of malice, moral turpitude or wanton dishonesty that warrants the imposition of exemplary damages (see Ross v Louise Wise Servs., Inc., 8 NY3d 478, 489 [2007]).
*14 Accordingly, the order of the Supreme Court, New York County (Marcy Friedman, J.), entered April 17, 2007, which, to the extent appealed from as limited by the briefs, granted plaintiffs motion for partial summary judgment as to liability on its first cause of action for breach of fiduciary duty, directed that defendant disgorge the compensation received during the period of its disloyalty and directed an assessment of its amount, and denied defendant’s cross motion for summary judgment dismissing the complaint, should be modified, on the law, so as to deny plaintiffs motion for partial summary judgment and grant defendant’s cross motion for summary judgment to the extent of dismissing the cause of action for attorney malpractice except as it pertains to defendant’s representation in connection with the Carpenters Local No. 120, Laborers Local No. 322 and Laborers Local No. 35 claims, the cause of action for breach of fiduciary duty, the cause of action for aiding and abetting the breach of fiduciary duty, and the cause of action for tortious interference with contractual relations, striking the demand for punitive damages, and vacating so much of the order as directs the disgorgement of attorneys’ fees and an assessment of the amount thereof, and otherwise affirmed, without costs.

. The law firm, sued herein as Wilson, Elser, Moskowitz, Edelman & Dicker and Wilson, Elser, Moskowitz, Edelman & Dicker LLP, is collectively referred to as defendant.

. A fourth claim asserted as a basis of liability in the complaint has been abandoned by plaintiff on appeal.

. The record also contains denials that defendant was ever consulted in connection with PIA’s decision.

. Defendant’s contention that its fees were paid by PIA, not plaintiff, is uncompelling. PIA acted as plaintiffs agent. Moreover, as defendant concedes, it was compensated with a percentage of the gross premiums received by PIA which, to the extent they represented premiums due plaintiff, were reduced commensurately.