24-3117-cv
*Rasmy v. Diederich*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11th day of December, two thousand twenty-five.

PRESENT:
> DENNIS JACOBS,
> JOSEPH F. BIANCO,
> > *Circuit Judges,*
> VICTOR A. BOLDEN,
> > *District Judge.*[*]

_____

GEBRIAL RASMY,

> *Plaintiff-Appellant,*

> v.                                                               24-3117-cv

MICHAEL DIEDERICH,

> *Appellee [Lienholder]*,

MARRIOTT INTERNATIONAL INC., DBA JW MARRIOT ESSEX HOUSE HOTEL, KAREN DOHERTY, INDIVIDUALLY, TEHRANI MEHRANI, INDIVIDUALLY, SESSKON PONGPANTA, INDIVIDUALLY, ESTRATUE STAMATIS, INDIVIDUALLY,

_____

[*] Judge Victor A. Bolden, United States District Judge for the District of Connecticut, sitting by designation.

*Defendants*.

FOR PLAINTIFF-APPELLANT:      ANDREA MOSS, Moss & Byrnes PLLC, Staatsburg, New York.

FOR DEFENDANT-APPELLANT:      MICHAEL DIEDERICH, JR., Diederich Law Office, Stony Point, New York.

Appeal from an order of the United States District Court for the Southern District of New York (Jed S. Rakoff, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the district court, entered on October 31, 2024, is **AFFIRMED** in part and **VACATED** in part.

Plaintiff-Appellant Gebrial Rasmy appeals from the district court's order granting a charging lien for $100,000 to Appellee-Lienholder Michael Diederich for legal services performed in connection with the underlying action, in which Rasmy asserted discrimination claims against his former employer, Marriott International, Inc. ("Marriott") and individual defendants, including his Marriott co-workers. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision.

Rasmy retained Diederich in February 2022. Prior to retaining Diederich, Rasmy had been represented by at least eleven law firms since the filing of his lawsuit in 2016. By the eve of trial, which was initially scheduled to commence on October 17, 2022, Marriott had offered $250,000 to settle the case, and Diederich strongly urged Rasmy to accept the proposed settlement because, according to Diederich, "it was highly unlikely that Mr. Rasmy would be able to prevail against Marriott[,]" and "a jury verdict would most likely be against an individual, Mr. [Stamatis] Efstratiu [a Marriott co-worker], without Marriott's deep pockets (and who perhaps was judgment proof)." Joint App'x at 11. On or about October 11, 2022, Rasmy discharged Diederich and was

2

represented by new counsel at the trial, which ultimately took place in March 2023. The jury found in favor of Rasmy on his retaliation claim against individual defendant Efstratiu and awarded $400,000 in damages, but found in Marriott's favor on the claims asserted against it. The district court subsequently awarded a charging lien to Diederich in the amount of $100,000 for the legal services he provided to Rasmy during the representation. *See generally Rasmy v. Marriott Int'l, Inc.*, No. 16-cv-4865 (JSR), 2024 WL 4652433 (S.D.N.Y. Oct. 31, 2024).

On appeal, Rasmy contends the district court abused its discretion by: (1) determining that Diederich was not discharged by Rasmy for cause, and therefore was entitled to a charging lien; (2) failing to conduct an evidentiary hearing prior to making that determination; and (3) awarding a charging lien in an amount that was not fair and reasonable.

We review a district court's order awarding attorney's fees, including granting a charging lien, for abuse of discretion. *See Lilly v. City of New York*, 934 F.3d 222, 227 (2d Cir. 2019); *accord Lightbox Ventures, LLC v. Brem Moldovsky, L.L.C.*, 802 F. App'x 30, 31 (2d Cir. 2020) (summary order). "A court abuses its discretion when (1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions." *Slupinski v. First Unum Life Ins. Co.*, 554 F.3d 38, 47 (2d Cir. 2009) (internal quotation marks and citation omitted). "We review a district court's factual findings, including those based on documentary evidence and inferences drawn from other facts, for clear error." *Garcia v. Teitler*, 443 F.3d 202, 211 (2d Cir. 2006). A finding is clearly erroneous where "we are left with the definite and firm conviction that a mistake has been committed." *Siemens Energy, Inc. v. Pertróleos de Venezuela, S.A.*, 82 F.4th 144, 153 (2d Cir. 2023) (internal quotation marks and citation omitted). "We [also] review

3

questions of law regarding the legal standard for granting or denying attorney's fees *de novo*." *Lilly*, 934 F.3d at 227.

We first address Rasmy's challenge to the district court's granting of the charging lien, based on a finding that Diederich was not discharged for cause, and then address his separate challenge to the amount of lien.

## I. The Granting of the Charging Lien

Section 475 of the New York Judiciary Law "governs attorneys' charging liens in federal courts sitting in New York" and "the lien created by [S]ection 475 . . . is enforceable in federal courts in accordance with its interpretation by New York courts." *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448–49 (2d Cir. 1998) (internal quotation marks and citation omitted). In relevant part, Section 475 provides:

> From the commencement of an action, special or other proceeding in any court or before any state, municipal or federal department . . ., the attorney who appears for a party has a lien upon his or her client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, award, settlement, judgment or final order in his or her client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien.

N.Y. Jud. L. § 475. As we have explained, "[i]f a lawyer is discharged for cause, he or she is not entitled to legal fees." *Universal Acupuncture Pain Servs., P.C. v. Quadrino & Schwartz, P.C.*, 370 F.3d 259, 263 (2d Cir. 2004) (citing *Teichner by Teichner v. W&J Holsteins, Inc.*, 64 N.Y.2d 977, 979 (1985)); *accord. Maher v. Quality Bus Serv., LLC*, 42 N.Y.S.3d 43, 46 (2016). Although New York law does not explicitly define "cause," we have made clear that, based upon New York case authority, "'impropriety or misconduct on the part of the attorney,' or the violation of a disciplinary rule is sufficient to show just cause[.]" *Holcombe v. Matisborchuk*, 747 F. App'x 875, 877 (2d Cir. 2018) (summary order) (quoting *Garcia*, 443 F.3d at 212, and citing *Schultz v.*

4

*Hughes*, 971 N.Y.S.2d 536, 538 (2013)). In doing so, we have emphasized that "[p]oor client relations, differences of opinion, or personality conflicts do not amount to cause[.]" *Garcia*, 443 F.3d at 212; *see also Klein v. Eubank*, 87 N.Y.2d 459, 463 (1996) ("Attorney-client relationships frequently end because of personality conflicts, misunderstandings or differences of opinion having nothing to do with any impropriety by either the client or the lawyer.").

Here, we discern no basis to disturb the district court's determination that Diedrich was not discharged for cause. The district court conducted a "review of the entire record" and concluded that Diederich "did not engage in any misconduct or abandon [] Rasmy during these proceedings." *Rasmy*, 2024 WL 4652433, at *3. Instead, the district court found that "Mr. Diederich's firing stemmed from 'differences of opinion' on both the strength of Mr. Rasmy's case and Marriott's proposed settlement offer, as well as 'personality differences' between Mr. Diederich and Mr. Rasmy." *Id.* (quoting *Garcia*, 443 F.3d at 212). Those factual findings, which were sufficiently supported by the documentary evidence and inferences drawn therefrom, were not clearly erroneous.

Rasmy argues that the district court relied upon an erroneous interpretation of law because it did not consider each of the various circumstances that other courts have catalogued as demonstrating that a discharge was for cause. We disagree. There is no requirement that a district court explicitly list all the forms of potential attorney misconduct and then individually explain why such misconduct has not been demonstrated in a particular case. Instead, it is clear from the record that the district court considered the various forms of misconduct being alleged by Rasmy. For example, the district court noted, while referencing Rasmy's allegations, that "Mr. Diederich did not 'sabotage [Mr. Rasmy's] case purposely,' 'tamper[] with [Mr. Rasmy's] file,' or fail to 'file [Mr. Rasmy's] documents properly to the court.'" *Id*. at *3 (alterations in original) (quoting

5

Rasmy Decl. at 1). The district court also noted that Rasmy "suggest[ed] that Mr. Diederich demoralized and discouraged his key witness," but found, "[d]espite Mr. Rasmy's arguments to the contrary, Mr. Diederich's conversations with the witness did not rise to the level of misconduct and instead reflected Mr. Diederich's view that Mr. Rasmy had a weak case and should accept Marriott's settlement offer." *Id*. at *3 n.2 (internal quotation marks and citation omitted). In short, the district court did not rely on an erroneous interpretation of New York law, but rather properly assessed whether Diederich engaged in any misconduct or impropriety that would constitute cause for discharge and reasonably determined that Rasmy had failed to point to any conduct by Diederich that satisfied that standard.

Rasmy asserts that Diederich's acknowledgment in his declaration that Rasmy had "lost confidence" in him was "an admission that by itself establishes the discharge was for cause under the applicable test," which the district court overlooked. Appellant's Br. at 24 (internal quotation marks omitted). We are unpersuaded. A client's loss of confidence in his attorney, by itself, is insufficient to support a discharge for cause. Instead, cause is shown when the loss of confidence is based upon some misconduct or failure to represent the client properly. Here, in his declaration, Diederich stated that Rasmy lost confidence in him "because [Diederich] predicted that he would lose against Marriott," Joint App'x at 21, and the district court did not err in determining, *inter alia*, that "'differences of opinion' on both the strength of Mr. Rasmy's case and Marriott's proposed settlement offer" were insufficient to constitute cause for Diederich's discharge. *Rasmy*, 2024 WL 4652433, at *3 (quoting *Garcia*, 443 F.3d at 212); *see also Marten v. BOCES, Bd. of Co-op. Educ. Servs.*, No. 97-cv-684 (DC), 1999 WL 294801, at *2 (S.D.N.Y. May 11, 1999) (Chin, *J.*) ("The attorney-client relationship was terminated not because of misconduct or improper handling of the case but because of the conflict that arose when [the attorney] lost patience with,

6

and acted rudely toward, plaintiff and plaintiff lost confidence in [the attorney]. Under these circumstances, [the attorney] was not discharged 'for cause' and he therefore has not forfeited his right to a fee.").

Rasmy next contends in conclusory fashion that the district court abused its discretion by failing to hold an evidentiary hearing as to whether Diederich was discharged for cause. Under New York law, "[i]n general, a hearing is required to determine whether a client has cause for discharging an attorney." *Doviak v. Finkelstein & Partners, LLP*, 934 N.Y.S.2d 467, 471 (2011). If, however, the question of cause "can be resolved on the record," then a hearing is not necessary. *See Ulico Cas. Co. v. Wilson, Elser, Moskowitz, Edelman & Dicker*, 865 N.Y.S.2d 14, 23–24 (2008); *see also Hawkins by Hawkins v. Lenox Hill Hosp.*, 526 N.Y.S.2d 153, 154 (1988) (concluding no hearing was warranted where "the parties zealously contested [the] matter—in the motion papers and during oral arguments—and the Judge determined that the attorneys were discharged without cause" and where "the record indicate[d] that there [was] no factual dispute as to the attorneys' conduct unresolvable from the papers on the motion" (alteration adopted) (internal quotation marks and citation omitted)). Here, Rasmy made no request to the district court for an evidentiary hearing, nor does he identify on appeal any particular factual disputes that the district court could not resolve based upon the written submissions of the parties. Thus, he has waived any challenge to the district court's failure to conduct such a hearing. *See Drywall Tapers & Pointers of Greater N.Y., Local 1974 v. Local 530 of Operative Plasterers & Cement Masons Int'l Assoc.*, 954 F.2d 69, 77 (2d Cir. 1992) ("When parties are content in the district court to rest on affidavits, the right to an evidentiary hearing is waived."); *see also Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal.").

## II.    The Amount of the Charging Lien

Rasmy argues, in the alternative, that the amount of the charging lien awarded by the district count, *i.e.*, $100,000, was "neither fair nor reasonable," as required under New York law. Appellant's Br. at 30.

"In New York, when a client discharges an attorney without cause, the attorney is entitled to recover compensation from the client measured by the fair and reasonable value of the services rendered whether that be more or less than the amount provided in the contract or retainer agreement[.]" *Smith v. Boscov's Dep't Store*, 596 N.Y.S.2d 575, 576 (1993) (alteration adopted) (internal quotation marks and citation omitted); *see also Nabi v. Sells*, 892 N.Y.S.2d 41, 43 (2009). "Recovery on a *quantum meruit* basis is called for even where the attorney discharged without fault was employed under a contingent fee contract." *Universal Acupuncture Pain Servs.*, 370 F.3d at 263 (internal quotation marks and citation omitted).  Moreover, as New York courts have explained:

> [W]hile the terms of the percentage agreement is one factor that may be taken into account in determining the value of the services rendered, it is not to be considered the dispositive factor.  Other factors, such as the nature of the litigation, the difficulty of the case, the time spent, the amount of money involved, the results achieved and amounts customarily charged for similar services in the same locality, for example, should also be considered[.]

*Smith*, 596 N.Y.S.2d at 576 (citations omitted); *accord Sutton v. N.Y.C. Transit Auth.*, 462 F.3d 157, 161 (2d Cir. 2006).  Separately, the client and discharged attorney are free to enter into a new contingent fee arrangement after the termination of the relationship and in lieu of a fixed amount for the *quantum meruit* value of services rendered.  *See Nabi*, 892 N.Y.S.2d at 43–44.

Here, the district court recognized that Diederich is "entitled to the 'fair and reasonable of the services' he rendered in this case." *Rasmy*, 2024 WL 4652433, at *3 (quoting *Universal Acupuncture Pain Servs.*, 370 F.3d at 263).  In calculating the amount, the district court explained:

8

> To date, apart from a $4,000 retainer fee, Mr. Rasmy has not paid Mr. Diederich for his services in this case. Mr. Diederich's retainer agreement provides that his fee shall be the greater of one third of "any sums recovered, whether recovered by suit, settlement or otherwise" or Mr. Diederich's "accrued fees." In this case, the sums are similar. One third of Mr. Rasmy's trial award is approximately $133,333. And, according to Mr. Diederich's detailed billing records, Mr. Diederich incurred $122,185 of expenses for his work on the case. Although Mr. Diederich is therefore arguably entitled to $133,333 or at least $122,185, he has moved under New York Judiciary Law § 475 for a charging lien of just $100,000 of Mr. Rasmy's $400,000 trial award.

*Id*. at *2 (citations omitted). In short, the district court determined that, because the $100,000 lien sought by Diederich was less than the one-third contingency fee contained in the retainer agreement and also less than the approximately $122,000 in fees outlined in the billing records, it was fair and reasonable.

Based on this record, we conclude that a remand is required because it is unclear from the record whether the district court considered the applicable factors under New York law for determining whether the amount sought for the charging lien is fair and reasonable. As noted above, although the term of the percentage fee is a factor to be considered under New York law, it must be analyzed in the context of the other factors, such as "the nature of the litigation, the difficulty of the case, the time spent, the amount of money involved, the results achieved and amounts customarily charged for similar services in the same locality, for example, should also be considered[.]" *Smith*, 596 N.Y.S.2d at 576. The district court did not cite or clearly analyze these factors. Moreover, with respect to Diederich's billing records, Rasmy argued that those records showed that the $100,000 amount was "excessive" because: (1) "[n]early all discovery was complete when Mr. Diederich took on the case"; and (2) "[w]hile Mr. Diederich handled the motion *in limine*, all other motion practice had already been completed by Mr. Rasmy's prior attorneys, including the summary judgment and appellate work." Dist. Ct. Dkt. No. 321 at 15 (italics added). Thus, Rasmy urged the district court to "sharply reduce the lien amount in light of

9

the excessive work that he performed on the case prior to his discharge." *Id*. The district court did not address these arguments and, in determining whether the requested amount was fair and reasonable, does not appear to have considered whether the hours spent on various tasks by Diederich were excessive.

In sum, because the district court did not address "the various factors generally considered when determining a *quantum meruit* recovery[,]" *Smith*, N.Y.S.2d at 576 (italics added), we conclude that the charging lien should be vacated and the matter remanded to the district court for further consideration of those factors.[1]

\*　　　\*　　　\*

We have considered Rasmy's remaining arguments and conclude that they are without merit. We therefore **AFFIRM** in part and **VACATE** in part the district court's order, and **REMAND** for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[1] *See, e.g.*, Joint App'x at 32–33 (the inexplicable billing of 26.25 hours in a single day, September 30, 2022).

10